IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON, SEATTLE DIVISION

| | |
|---|---|
| David G. Oppenheimer,<br><br>           Plaintiff,<br><br>    v.<br><br>eXp Realty, LLC,<br><br>           Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No.<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT AND JURY DEMAND**

Plaintiff, David G. Oppenheimer ("Oppenheimer" or "Plaintiff"), by and through his attorneys, for his complaint against Defendant eXp Realty, LLC ("EXP" or "Defendant"), alleges:

**NATURE OF THE ACTION**

1. This action arises under the United States Copyright Act, 17 U.S.C. §§ 101 *et seq.* and 17 U.S.C. §§ 501 *et seq.*, for copyright infringement of a work registered with the United States Copyright Office, as well as for knowing distribution of a copyrighted work with false and/or altered copyright management information in violation of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201 *et seq.* ("DMCA").

**THE PARTIES**

2. Oppenheimer is an individual who is actively engaged in the business of creating and licensing photography and who resides in Asheville, North Carolina.

3. Defendant EXP is a Washington limited liability company with an office to do business in Whatcom County, Washington. EXP owns and operates the interactive website located at the URL exprealty.com (together with all subpages, "EXP Website").

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. §§ 1331 and 1338.

5. Plaintiff is informed, believes, and thereon alleges that Defendant has sufficient contacts with this District generally, such that Defendant is subject to the exercise of jurisdiction of this Court. Specifically, Defendant is a domestic limited liability company formed in the State of Washington with its principal place of business in this District.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

7. Oppenheimer is a noted and respected professional photographer with many years of experience and considerable reputation.

8. Oppenheimer's photographs have appeared in *inter alia* Rolling Stone, MSNBC, MTV, AOL, and FUSE. The subjects of Plaintiff's photography include President Bill Clinton, Bob Dylan, Bruce Springsteen, Carlos Santana, and Paul McCartney, among countless other instantly recognizable persons and places, including Seattle, Washington and Asheville, North Carolina.

9. Oppenheimer has over the years performed photography services through his own name as well as in the form and style of "Performance Impressions, LLC," which is a North Carolina limited liability company in good standing.

10. Oppenheimer earns his livelihood from the creation and licensing of his images to permitted third-party licensees for compensation, as well as from selling prints of his photographs.

11. Upon information and belief, EXP is a company that controls and operates the EXP Website. Upon information and belief, EXP is part of a conglomerate of entities, the primary business of which is to serve as a real estate brokerage.

### Oppenheimer Creates, Registers, and Publishes the Photograph

12. In early May 2013, Oppenheimer created a panoramic photograph of Asheville, North Carolina and its surroundings ("Photograph") through significant skill. Specifically, Plaintiff captured the Photograph from a nearby mountainside vantage point using professional camera equipment – namely, a special graduated neutral density filter to capture high dynamic range detail in mountains and clouds. This required skill and experience to best capture the Photograph.

13. The Photograph is an original work that Oppenheimer registered with the United States Copyright Office as part of a collection of photographs. The Photograph is registered with the United States Copyright Office as part of the collection *Bob Dylan and His Band and Travels* under Copyright Registration Number VAu 1-140-655, bearing a May 7, 2013, effective date of registration. A copy of the copyright registration certificate for the Photograph is attached hereto as Exhibit A. The deposit copy of the Photograph submitted along with the copyright application is attached hereto as Exhibit B.

14. After submitting the Photograph for registration, Plaintiff published the Photograph through various websites, where Oppenheimer makes his works available for print sales and licensing. As is his pattern and practice, the published version of the Photograph contained copyright management information under 17 U.S.C. § 1202(c) ("CMI"), including a visible watermark complying with notice of copyright provisions (17 U.S.C. § 401(d)) on the face of the Photograph and notice of copyright embedded in the metadata of the Photograph. CMI in the

metadata of the Photograph included proper notices of copyright, and notices declaring "All Rights Reserved" in addition to instructions for licensing, Oppenheimer's address, phone number, and email. Oppenheimer does all this to distinguish his works from others, as well as to ensure that people who view the Photograph appreciate that Oppenheimer owns all rights and title to the Photograph and follow proper protocols in licensing the Photograph. Plaintiff's published version of the Photograph is attached as Exhibit C hereto bearing this subsequently added CMI on the face of the Photograph.

15. Plaintiff has complied in all respects with Title 17 of the United States Code (Copyright Act of 1976) and all other United States laws governing copyrights and has secured the exclusive rights and privileges in and to the copyright of the Photograph.

16. Since the date of registration, Plaintiff has held all the exclusive rights to the Photograph, including, without limitation, the rights to reproduce the work, to prepare derivative works, to distribute copies to the public, and to display the work publicly pursuant to 17 U.S.C. § 106.

17. Plaintiff's copyright referenced above is presently valid and subsisting, was valid and subsisting from the moment of creation, and has been valid and subsisting in all conditions precedent to the filing of this suit.

**Use of the Photograph by Defendant's Agent Without Authorization**

18. Upon information and belief, in 2018, Robert A. Ombres, a real estate agent in North Carolina ("Ombres"), obtained the published version of the Photograph via a Google search, caused the uploading of a copy of the Photograph through the EXP Website, and used such copy as a banner image at the following URL: robombres.exprealty.com ("Ombres Page"). A copy of a screenshot of the Ombres Page as of August 30, 2021, containing unauthorized use of the Photograph is attached hereto as Exhibit D.

19. The North Carolina Real Estate Commission ("NCREC") lists EXP as the "primary firm" associated with Ombres' broker license in the NCREC online licensee database. Upon information and belief, Ombres is an agent of EXP. A copy of the screenshot from the NCREC's website containing such information about Ombres' licensure is attached hereto as Exhibit E.

20. Upon information and belief, as part of uploading the Photograph to the Ombres Page, Ombres or a third party at the direction of Ombres or EXP uploaded the Photograph to the following URLs (collectively, "Image URLs"):

- https://img.kvcore.com/cdn-cgi/image/fit=scale-down,format=auto/https://dtzulyujzhqiu.cloudfront.net/expcorporate377/website/26556/background/1530663916.jpg ("KV Core Image URL")

- https://dtzulyujzhqiu.cloudfront.net/expcorporate377/website/26556/background/1530663916.jpg ("Cloudfront Image URL")

21. The Photograph remains accessible at the Image URLs. A copy of the Photograph contained at the KV Core Image URL, as available at least as recently as September 23, 2021, is attached hereto as part of Exhibit F. A copy of the Photograph contained at the Cloudfront Image URL, as available via Internet Explorer at least as recently as September 23, 2021, is attached hereto as part of Exhibit G. As of September 23, 2021, attempts to access the Cloudfront Image URL via other browsers, such as Google Chrome and Microsoft Edge, result in an automatic download of the Photograph onto the viewer's device.

22. Whether Oppenheimer's CMI on the face of the Photograph can be seen on the Ombres Page in any given instance depends on the dimensions of the device displaying the Ombres Page. In some instances, Oppenheimer's facial CMI is completely not visible. In other instances, Oppenheimer's facial CMI is partially visible. Oppenheimer's CMI contained in the metadata of

the Photograph has been removed from the copies of the Photograph made available through the Ombres Page and the Image URLs.

23. Regardless of the status of Oppenheimer's CMI, the Ombres Page features EXP's branding on the face of the Photograph. Specifically, EXP's logo containing the literal element "EXP REALTY" is visible in the upper left portion of the Photograph, while the middle of the Photograph on the Ombres Page features Ombres' headshot and name, along with the statement "eXp Realty in North Carolina Mountains" prominently visible underneath Ombres' name. A true and correct copy of the Ombres Page as of August 30, 2021, inclusive of EXP's branding, is attached hereto as Exhibit D.

24. Oppenheimer discovered Ombres' uses of the Photograph on September 27, 2018.

**Oppenheimer Provides Notice of Copyright Infringement to Defendant**

25. On or around September 17, 2020, Oppenheimer, through his attorneys, sent a notice of copyright infringement via FedEx to the address listed as Ombres' address on the NCREC website and on the Ombres Page. According to tracking information available through FedEx, the September 17 correspondence was delivered to the listed address on September 21, 2020, and was signed for by Ombres. No response was received by the requested date of October 13, 2020. (True and correct copies of this letter and the corresponding confirmation of delivery are attached hereto as Exhibit H.) In November 2020, Oppenheimer's counsel again attempted to contact Ombres by submitting a message through the "contact" link under the "resources" tab in the upper right corner of the Ombres Page.

26. On or around March 9, 2021, not having received any response to any prior attempts to communicate with Ombres, Oppenheimer, through his attorneys, sent a notice of copyright infringement to EXP. This correspondence sent to EXP contained notice-and-takedown language in compliance with 17 U.S.C. § 512(c)(3)(A). (A true and correct copy of this correspondence is

attached hereto as Exhibit I.) Oppenheimer caused the sending of the additional infringement notice to EXP's principal place of business for three reasons. First, EXP is listed as the primary firm through which Ombres holds his real estate agent license in North Carolina, as discussed in Paragraph 19 above. Second, EXP was listed as the owner of the EXP Website, of which the Ombres Page is a subpage. (A true and correct copy of the ownership record of the EXP Website from WhoIs.com is attached hereto as Exhibit J.) Third, as of March 9, 2021, EXP was listed with the U.S. Copyright Office and in the DMCA Notice portion of the EXP Website as the DMCA designated agent for the EXP Website.

27. While EXP was listed as the DMCA Designated Agent for the EXP Website in 2021, at least as recently as December 10, 2019 (*i.e.*, well over one year after the beginning of the infringement), the DMCA Notice accessible through the EXP Website did not include EXP's name, address, phone number, and email, as required under 17 U.S.C. § 512(c)(2). Instead, EXP's DMCA Notice included only generic placeholder terms, such as "Firm Name," "Mailing Address for notices," "City, State Zip," "Country," "Designated Agent Name," and "Designated Agent Email Address." A true and correct copy of the DMCA Notice on the EXP Website, as captured on December 10, 2019, is attached hereto as Exhibit K.

**Defendant Fails to Remove or Disable Access to the Photograph Expeditiously**

28. On or around March 22, 2021, EXP, through counsel, responded to Oppenheimer's counsel's letter of March 9, 2021. EXP's counsel disclaimed all responsibility of EXP to deal with the Ombres Page, based on the premise that Ombres was allegedly an independent contractor rather than an employee of EXP. According to EXP's counsel's letter, EXP was "taking step[s] to inform Mr. Ombres that is it [sic] his responsibility to address this matter directly with [Oppenheimer's counsel]." EXP's counsel further alleged that EXP "did not have control over the [Ombres Page

and the Cloudfront Image URL].” A true and correct copy of the March 22, 2021, response from EXP's counsel is attached hereto as Exhibit L.

29. On April 27, 2021, Ombres sent an email directly to Oppenheimer. In his April 27 email, Ombres stated that he did not receive the prior correspondence from Oppenheimer's counsel until March 17, 2021, when these communications "were forwarded to [Ombres] by the real estate brokerage [Ombres is] an agent of." Ombres continued that "[a]t that time, [Ombres] was advised to stand by and not communicate" regarding Oppenheimer's allegations. Ombres was advised by EXP "to obtain legal counsel" on April 26, 2021. A true and correct copy of Ombres' April 27 correspondence is attached hereto as Exhibit M.

30. The Photograph remained accessible through the Ombres Page for over four months after EXP's initial response, so on or around August 12, 2021, Oppenheimer again, through counsel, caused the sending of a notice of copyright infringement to EXP. A true and correct copy of such correspondence is attached hereto as Exhibit N.

31. On or around August 19, 2021, EXP's counsel responded to Oppenheimer's counsel's letter of August 12, 2021, in effectively the same manner as EXP's counsel's letter of March 22, 2021. A true and correct copy of such correspondence is attached hereto as Exhibit O.

32. At least as recently as September 14, 2021, the Photograph was accessible through the Ombres Page. The Photograph remains accessible through the Image URLs as of the date of this Complaint.

### FIRST CLAIM FOR RELIEF
### Copyright Infringement Under 17 U.S.C. § 501

33. Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–32 of this Complaint.

34. Plaintiff owns the exclusive rights to the copyrighted Photograph.

35. Ombres holds his real estate broker license in North Carolina using EXP as the primary firm for the license. Ombres is an agent of EXP.

36. Ombres, acting as an agent of EXP, caused the publication, copying, and display of the Photograph on the Ombres Page and the Image URLs.

37. Upon information and belief, EXP does not provide brokers operating as agents of EXP with sufficient training with respect to copyright law and the agents' responsibilities thereunder.

38. Upon receiving actual notice of the infringement of the Photograph on a subpage of the EXP Website, a website owned by Defendant, Defendant did not act expeditiously to remove, or disable access to, the infringing use of the Photograph on a subpage of the website controlled by Defendant. Furthermore, Defendant instructed Ombres not to respond to Plaintiff's notice of infringement for over a month after receiving notice of the infringement at Defendant's principal place of business and after informing Ombres thereof.

39. Defendant's acts are and were performed without the permission, license, or consent of Plaintiff.

40. Defendant acted with willful disregard of the laws protecting Plaintiff's copyright.

41. Defendant infringed Plaintiff's copyright in the Photograph in violation of 17 U.S.C. § 501.

42. Plaintiff has sustained and will continue to sustain substantial damage in an amount not yet fully ascertainable.

43. Plaintiff is informed, believes, and thereon alleges that Defendant has obtained profits recoverable under 17 U.S.C. § 504. Plaintiff will require an accounting from Defendant of all monies generated from the Photograph.

44. In the alternative and at his election, Plaintiff is entitled to seek maximum statutory damages for willful infringement by Defendant of Plaintiff's rights in the Photograph in an amount of $150,000 under 17 U.S.C. § 504(c)(2). In the event that the trier of fact does not find that Defendant willfully infringed Plaintiff's copyright in the Photograph, Plaintiff is entitled to seek maximum statutory damages in an amount of $30,000 under 17 U.S.C. § 504(c)(1).

45. Plaintiff is entitled to seek recovery of Plaintiff's attorneys' fees and costs of suit from the Defendant, pursuant to 17 U.S.C. § 505.

## SECOND CLAIM FOR RELIEF
### Vicarious Copyright Infringement
### (In the Alternative)

46. Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–45 of this Complaint.

47. Pleading further but without waiver of the foregoing, Oppenheimer shows that at the time Ombres (or individuals at the direction of Ombres) performed the infringing acts, Ombres was an agent of EXP. Specifically, EXP acted as the primary firm through which Ombres held his real estate broker's license in North Carolina.

48. Regardless of Ombres' employment or contractor status with respect to EXP, upon information and belief, as the owner and operator of the EXP Website, at all relevant times, EXP had (and continues to have) the authority to control all subpages of the EXP Website, including the Ombres Page. Furthermore, as of the dates that Oppenheimer's counsel sent takedown notices to EXP, EXP was listed as the DMCA Designated Agent for the EXP Website. As a result, at all relevant times, EXP had (and continues to have) the right and ability to supervise and/or control the infringing conduct with respect to subpages of the EXP Website, and/or to stop the infringements once they began.

49. Upon information and belief, EXP had an obvious and direct financial interest in these infringing activities of Ombres, because Ombres' use of the Photograph on the EXP Website and the Ombres Page advertised and promoted the services of EXP (including through the inclusion of EXP's branding superimposed directly on the Photograph), thereby encouraging website viewers to purchase and use EXP's and/or EXP's affiliates' and/or an EXP broker's services. Infringement of the Photograph allowed EXP to promote and sell EXP's and/or EXP's affiliates' and/or an EXP broker's services more effectively by drawing, capturing, holding, and prolonging the attention of the average online visitor, providing a direct positive impact on sales and/or the brand, public image, and reputation of EXP and the EXP Website.

50. Accordingly, EXP is personally liable to Oppenheimer as a joint infringer or is otherwise vicariously liable for the actions of Ombres.

### THIRD CLAIM FOR RELIEF
### Contributory Copyright Infringement
### (In the Alternative)

51. Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–45 of this Complaint.

52. Alternatively, EXP has intentionally induced, encouraged, caused, enabled, facilitated, and/or materially contributed to the infringements complained of herein by directly and/or indirectly promoting the infringements.

53. Upon information and belief, as the primary firm through which Ombres was licensed as a broker in North Carolina, EXP at all relevant times was a dominant influence with respect to Ombres' operations and decisions, including with respect to the Ombres Page. EXP also controlled the EXP Website's (including the Ombres Page's) policies and protocols, and established enterprise-wide rules and cultures which encouraged the infringing activities by Ombres.

54. In addition, upon gaining actual knowledge of the infringement of the Photograph by one of EXP's real estate agents, EXP instructed Ombres "to stand by and not communicate" with Oppenheimer regarding the infringement for at least a month. After advising Ombres to obtain separate counsel and, presumably, to begin communicating with Oppenheimer, EXP nevertheless did not cause the removal of the Photograph from the Ombres Page in any expeditious manner, as the Photograph remained accessible through the Ombres Page for around six months after receipt at EXP's primary offices of notice of the infringement associated with the Ombres Page, and for around twelve months after the delivery of the initial cease and desist letter sent to EXP's agent in North Carolina.

55. Accordingly, EXP is personally liable to Oppenheimer as a contributory infringer for the infringing activities of Ombres.

## FOURTH CLAIM FOR RELIEF
### Violations of the DMCA Under Sections 1202(a) and 1202(b) of the Copyright Act

56. Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–45 of this Complaint.

57. Plaintiff's published version of the Photograph contained CMI within the digital file of the Photograph, including identifying metadata and, *inter alia*, the identification of the author as "David Oppenheimer," as well as a plainly visible copyright notice stating "© 2013 David Oppenheimer" on the Photograph itself.

58. Upon information and belief, Defendant, or third parties at Defendant's direction and behest (discovery will reveal which), violated the DMCA by, at a minimum, distributing or importing for distribution false CMI for at least six months after receiving actual notice of infringement.

59. While Oppenheimer's facial CMI was covered in most iterations of the Photograph on the Ombres Page, and while Oppenheimer's CMI contained in the metadata was removed completely in all versions of the Photograph published on the Ombres Page, Defendant's branding, inclusive of the words "EXP REALTY" and "eXp Realty in North Carolina Mountains," was superimposed prominently upon all publications of the Photograph on the Ombres Page, such that Defendant's branding served as false CMI for the Photograph.

60. Subsequently, Defendant distributed the Photograph through a subpage of the EXP Website with Oppenheimer's metadata-based CMI removed and facial CMI often concealed, while at the same time containing EXP's false CMI.

61. Such actions further demonstrate Defendant's willful infringement of the Photograph.

62. The aforesaid actions, including without limitation the distribution of each copy of the Photograph through the Ombres Page, constitute violations of Sections 1202(a) and 1202(b) of the Copyright Act. More specifically, each distribution of the Photograph through a subpage of the EXP Website in the aggregate resulted in at least four separate violations of Section 1202 of the Copyright Act – a violation of 1202(a)(1) for knowing provision of EXP's false CMI, a violation of 1202(a)(2) for knowing distribution or importing for distribution of EXP's false CMI, a violation of 1202(b)(2) for distribution or import for distribution of CMI knowing that the CMI had been removed or altered without permission from Oppenheimer, and a violation of 1202(b)(3) for distribution or import for distribution of a copy of the Photograph knowing that CMI had been removed or altered without Oppenheimer's permission.

63. Upon information and belief, Defendant knew or had reasonable grounds to know that by permitting continued publication and display of the Photograph on the EXP Website via

the Ombres Page, which in many instances concealed Plaintiff's CMI, Defendant would induce, enable, facilitate, or conceal Defendant's infringement of Plaintiff's Photograph.

64. Upon information and belief, Defendant intentionally or knowingly distributed the Photograph with false CMI as aforesaid, in order to conceal that Defendant's use of the Photograph was without the authorization of Plaintiff and in violation of law.

65. As a result of Defendant's actions with regard to CMI, Plaintiff has been and will continue to be damaged in an amount as yet to be determined.

66. As a result of Defendant's actions with regard to CMI, Plaintiff is entitled to damages in the form of actual or statutory damages pursuant to 17 U.S.C. §§ 1203(b)(3) and 1203(c), costs pursuant to 17 U.S.C. § 1203(b)(4), reasonable attorneys' fees pursuant to 17 U.S.C. § 1203(b)(5), a temporary and permanent injunction pursuant to 17 U.S.C. § 1203(b)(1), and the impounding, modification, or destruction of any items involved in the violation pursuant to 17 U.S.C. §§ 1203(b)(2) and 1203(b)(6).

67. Plaintiff is entitled to a separate award of damages for each violation of 17 U.S.C.§ 1202.

## JURY DEMAND

Plaintiff requests a trial by jury for all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment against Defendants as follows.

1. Pursuant to 17 U.S.C. § 502, that Defendant and Defendant's agents, servants, employees, representatives, successors, and assigns, and all persons, firms, corporations, or other entities in active concert or participation with Defendant, be permanently enjoined from directly or indirectly infringing the Plaintiff's copyrights in any manner, including generally, without

limitation, reproducing, distributing, displaying, performing, or making derivative works of the Photograph;

    2. That Defendant be required to perform a complete and full accounting of all profits generated by Defendant from the Photograph;

    3. Pursuant to 17 U.S.C. § 504, that Defendant be required to pay actual damages and disgorgement of all profits derived by Defendant from the Defendant's acts of copyright infringement; in the alternative, upon Plaintiff's election, pursuant to 17 U.S.C. § 504, that Defendant be required to pay statutory damages up to $150,000 for each work infringed for Defendant's acts of copyright infringement and, in the event that the factfinder determines that Defendant's infringement was not willful, that Defendant be required to pay statutory damages up to $30,000 for each work infringed by the Defendant;

    4. Pursuant to 17 U.S.C. § 1203(c)(2), that Defendant be required to pay actual damages and disgorgement of all profits derived by Defendant from any and all of the Defendant's violations of Plaintiff's rights under the DMCA; in the alternative, upon Plaintiff's election, pursuant to 17 U.S.C. § 1203(c)(3)(B), that Plaintiff be awarded the maximum statutory damages of $25,000 for each individual violation of the DMCA;

    5. Pursuant to 17 U.S.C. §§ 505 and 1203(b)(4)–(5), Defendant be required to pay Plaintiff the costs of this action, prejudgment interest, and reasonable attorneys' fees; and

    6. Such other and further relief as the Court shall find just and proper.

Dated: September 24, 2021

        Respectfully submitted,

        **HOERSCHELMANN DIETZ PLLC**

        By:    /s/ Nathan A. Hoerschelmann
        Nathan A. Hoerschelmann
        HOERSCHELMANN DIETZ PLLC
        1143 Martin Luther King Jr Way, #145
        Seattle, Washington 98122
        nathan@hdpnw.com

        **ZLATKIN WONG LLP**

        By:    /s/ Ilya G. Zlatkin
        Ilya G. Zlatkin (*pro hac vice* forthcoming)
        ZLATKIN WONG LLP
        4245 North Knox Avenue
        Chicago, Illinois 60641
        ilya@zlatkinwong.com

        *Attorneys for Plaintiff David G. Oppenheimer*